UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED

08 FEB -8 AM 11: 20

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>1.) Jesus MIRANDA-Roman,<br>2.) Jose Manuel CASTRO-Maldonado<br>3.) Helder Irizarry Rivera, Jr.<br><br>Defendant(s) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Magistrate Case No.

COMPLAINT FOR VIOLATION OF:

Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii)
Transportation of Illegal

Aliens

'08 MJ 0363

The undersigned complainant, being duly sworn, states:

On or about **February 6, 2008,** within the Southern District of California, defendants **Jesus MIRANDA-Roman, Jose Manuel CASTRO-Maldonado, and Helder Irizarry Rivera, Jr.** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Maria Dolores ALVARES-Posas, Bonifacio VILLAREAL-Pasillas,** and **Celerina MUNOZ-Lopez** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

_____
SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **8th** DAY OF **February 2008**

_____
Ruben B. Brooks
UNITED STATES MAGISTRATE JUDGE

**CONTINUATION OF COMPLAINT:**
1.) Jesus MIRANDA-Roman
2.) Jose Manuel CASTRO-Maldonado
3.) Helder Irizarry Rivera, Jr.

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Maria Dolores ALVARES-Posas, Bonifacio VILLAREAL-Pasillas, and Celerina MUNOZ-Lopez** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On February 6, 2008, Supervisory Border Patrol Agent M. Hansen and Senior Patrol Agents L. Rodriguez, T. Engelhorn, J. Baez and J. Miranda were conducting anti-smuggling duties in Eastern San Diego County as assigned to the San Diego Sector Smuggling Interdiction Group (SIG). All agents were in plainclothes, and operating unmarked DHS surveillance/enforcement vehicles with fully functioning emergency lights and audible police sirens. SIG Agents were monitoring activities in an area near the Pine Valley interchange of Interstate 8, near Pine Valley, California. This area is located in a remote mountainous region approximately 50 miles east of San Diego, California and about 20 miles east of the Tecate, California Port of Entry. Many areas surrounding this location are well-known alien smuggling load-up, load vehicle drop-off and checkpoint circumvention routes. Agent Rodriguez had been alerted to possible alien smuggling activity by Supervisory Border Patrol Agent D. Landers of the Campo Station. This alert was issued due to a seismic intrusion device activation located approximately twenty minutes south of I-8 in this area.

At approximately 9:10 PM, Agent Rodriguez observed a gold colored Dodge Intrepid, later found to be displaying a California license plate conduct a u-turn from eastbound to westbound I-8 at the Pine Valley interchange. Agent Rodriguez alerted other SIG agents of this observation and prepared to begin following the Intrepid. Before Agent Rodriguez could fall in behind the Intrepid, and approximately forty-five seconds behind the Intrepid, a white Ford Taurus, later found to be bearing a California license plate, performed an identical u-turn and entered I-8 westbound behind the Intrepid. In this area, it is the experience of all aforementioned agents that it is common for alien smugglers to drop off vehicles at predetermined load-up locations and await nearby to act in the capacity of a scout, looking out for law enforcement presence during the loading and transportation process. Agent Rodriguez followed the Taurus from a short distance behind and saw that the Intrepid had pulled to the shoulder of the westbound onramp as if awaiting the Taurus. As soon as the Taurus passed the Intrepid, the Intrepid proceeded directly behind it. As he followed, Agent Rodriguez contacted Border Patrol Radio Dispatch and requested vehicle registration information on the Intrepid. Dispatch soon advised him that the Intrepid had not been reported stolen and the current registered owner was based out of San Diego, California. Once both vehicles entered I-8 the Intrepid followed closely behind the Taurus until they neared Highway 79. At approximately this location the Intrepid passed the Taurus and began to pull ahead. Agent Miranda entered I-8 from Highway 79 behind the Intrepid and took over surveillance of this vehicle.

Agent Rodriguez contacted Dispatch and requested a stolen vehicle/registered owner check of on the Taurus. Dispatch soon advised him that the Taurus had not been reported stolen and the current registered owner was based out of Palmdale, California. Agent Miranda soon advised agents that the Intrepid had exited I-8 at the Willows exit. Agent Miranda observed that the Intrepid waited at the stop sign for a few moments before proceeding back eastbound on Willows Road. As the Intrepid drove eastbound it did so at a reduced speed, below the posted speed limit, and it continued east past the Viejas Casino, headed back towards the East Willows/I-8 interchange.

**CONTINUATION OF COMPLAINT:**
**1.) Jesus MIRANDA-Roman**
**2.) Jose Manuel CASTRO-Maldonado**
**3.) Helder Irizarry Rivera, Jr.**

As soon as the Taurus passed the Willows exit, Agent Hansen fell in behind Agent Rodriguez. Agent Hansen observed that the Taurus' rear suspension appeared to be stiffer than normal. The rear end did not sag significantly, but alien smugglers commonly modify rear suspensions of smuggling conveyances in an effort to overload a vehicle with concealed aliens while presenting a level riding appearance. These modifications often make the vehicle's rear suspension present a bouncy appearance when empty and a stiff appearance when under a heavy load.

Agent Rodriguez advised Dispatch that he was going to attempt a vehicle stop on the Taurus. Agents Rodriguez and Hansen both activated their emergency lights and sirens. After a short distance, under one mile, the Taurus pulled partially off of the interstate, straddling a raised curb. This caused sparks to begin emanating from the Taurus' undercarriage. As the Taurus slowed, but while still moving forward, both driver side doors were opened from within. The Taurus was fast approaching a roadway callbox and the driver's door closed then the Taurus traveled fully off the interstate onto the dirt shoulder. The driver's door again opened and as the Taurus came to a stop the driver, later identified as one of three defendants, **Jesus MIRANDA-Roman**, exited the driver's door simultaneously with a passenger directly behind the driver. This person was later identified as Miguel Angel CARBAJAL-Arias. MIRANDA exited and began to run southeast. CARBAJAL exited and began to run westbound. One additional individual, identified as Bernabe GONZALEZ-Medina also exited and attempted to flee afoot following directly behind CARBAJAL. The Taurus continued in a west/northwesterly direction, driverless and under its own power until colliding with a protruding boulder on the face of the cliff north of I-8.

Agent Hansen pursued MIRANDA, while Agent Rodriguez pursued CARBAJAL. Both Agents were yelling in English and Spanish, identifying themselves as Border Patrol Agents and commanding the fleeing individuals to stop. None obeyed these commands.

As MIRANDA neared the bottom of the median slope he lost his balance and went down. As MIRANDA was attempting to get up Agent Hansen overtook him and pushed him back to the ground. Agent Hansen was attempting to hold MIRANDA down with his right knee across MIRANDA's left shoulder blade and upper chest, but was unable to immediately bring MIRANDA under control. Agent Hansen attempted to grab his radio in order to request assistance with MIRANDA, who was continuing to struggle in an attempt to free himself and abscond. At this time Agent Hansen observed that there were several vehicles traveling eastbound at highway speeds within close proximity to this struggle and his grasp of MIRANDA was slipping. With a bare, empty, closed right fist Agent Hansen struck MIRANDA in the nose one time in an effort to gain his compliance. MIRANDA immediately responded positively and his struggling ceased. Agent Hansen placed MIRANDA in handcuffs and notified responding agents that the driver was in custody.

As Agent Rodriguez pursued GONZALEZ and CARBAJAL westbound on the northern shoulder of I-8, he witnessed each throw a small object as they ran. These two objects were later recovered and found to be cellular telephones. One was a blue Motorola I760 cellular telephone, the other a black Motorola Cingular cellular telephone. A short distance beyond this, Agent Rodriguez was able to overtake and apprehend both CARBAJAL and GONZALEZ. Agent Rodriguez had to push CARBAJAL to the ground twice to affect his arrest, GONZALEZ was mostly compliant. Agents Rodriguez and Hansen returned to the Ford and discovered a total of five passengers remaining in the passenger compartment and three individuals secreted in the trunk. Agent Hansen secured MIRANDA in the back seat of his DHS vehicle. Agent Rodriguez identified himself as Border Patrol Agents in the Spanish language and questioned all ten of the passengers from the Taurus as to their citizenship and immigration status. All ten admitted to being citizens and nationals of Mexico. None was able to produce any immigration documents allowing them to enter, be or remain in the United States legally.



**CONTINUATION OF COMPLAINT:**
**1.) Jesus MIRANDA-Roman**
**2.) Jose Manuel CASTRO-Maldonado**
**3.) Helder Irizarry Rivera, Jr.**

Agent Rodriguez placed these ten individuals under arrest for illegal entry. Agent Hansen advised MIRANDA that he was under arrest for alien smuggling and proceeded to advise him of his Miranda rights in the Spanish language. MIRANDA said that he understood his rights. MIRANDA was not questioned regarding this smuggling event until later, which was videotaped.

Simultaneous to the events surrounding the vehicle stop, bailout, crash and foot pursuit of the subjects in the Taurus, Agent Miranda continued his mobile surveillance of the Intrepid. Agent Miranda followed the Intrepid as it proceeded eastbound on Willows Road past the Viejas Casino. Agent Engelhorn exited I-8 at the Willows exit and was coming up to assist Agent Miranda with surveillance of the Intrepid. Agent Miranda observed that the Intrepid entered onto I-8 westbound in the direction of the Taurus at approximately the time Agents advised that the Taurus was bailing out. The Intrepid was traveling at a rapid pace, now above the posted speed limit.

Agent Miranda notified dispatch of his intent to conduct a vehicle stop on the Intrepid and activated his lights and siren. The Intrepid yielded without incident. Agent Engelhorn was present as backup. Agent Miranda approached and identified himself as a Border Patrol Agent. Agent Miranda noticed that there were four cellular telephones in plain view in the Intrepid, yet there were only two persons visible. The use of cellular telephones to coordinate alien smuggling evolutions is very common. The driver produced a California driver license, identifying him as one of the defendants, Jose Manuel CASTRO-Maldonado. The passenger produced a California identification card, identifying him as another defendant, Helder Irizarry RIVERA Jr. Agents Miranda and Engelhorn asked them what they had been doing and where they were destined. Both claimed that they had decided to go to the Golden Acorn Casino, and then changed their minds, deciding instead to go to Viejas Casino. Upon getting to Viejas, they decided to go home instead. Agent Miranda contacted dispatch and requested record checks on both. Dispatch soon advised Agent Miranda that RIVERA had numerous prior alien smuggling apprehensions as well as one prior narcotics smuggling arrest and conviction. Agents Miranda and Engelhorn placed both under arrest for suspicion of alien smuggling.

**DEFENDANT STATEMENT:**

Jesus MIRANDA-Roman stated that he is a citizen and national of Mexico, illegally present in the United States without any United States immigration documents allowing him to enter or remain in the United States Legally. The defendant stated that he was born in Lazaro Cardenas, Michoacan, Mexico. The defendant stated that he has been arrested approximately four times by the Border Patrol in the past. The defendant said that he has tried to illegally enter into the United States several times but has been unsuccessful. Because the defendant had no money left to pay the required smuggling fee, the defendant agrees to drive the group that he would cross with once in the United States. The defendant stated that his final destination was Las Vegas, Nevada where he intended to work.

*C E M*

**CONTINUATION OF COMPLAINT:**
**1.) Jesus MIRANDA-Roman**
**2.) Jose Manuel CASTRO-Maldonado**
**3.) Helder Irizarry Rivera, Jr.**

## DEFENDANT STATEMENT:

Hedler RIVERA–Irizarry Jr., stated that he was a citizen of the United States and that he was born in Bakersfield, California. The defendant stated that he has been previously arrested on two prior occasions for alien smuggling. The first time the defendant was arrested in Calexico, California after driving in tandem with vehicle containing illegal aliens. The defendant said that he was arrested a second time at the Temecula Border Patrol Checkpoint in a vehicle containing illegal aliens.

## DEFENDANT STATEMENT:

The defendant Jose Manuel CASTRO-Maldonado stated that he was born in Tijuana, Baja California, Mexico on Mach 19, 1981. The defendant stated that he became a citizen of the United States after naturalizing on June 20, 2002. The defendant said that he resides in El Cajon, California and denied having any prior arrest. The defendant stated that he and Hedler RIVERA-Irizarry Jr. are friends.

## MATERIAL WITNESSES STATEMENTS:

Material witnesses **Maria Dolores ALVARES-Posas, Bonifacio VILLAREAL-Pasillas, and Celerina MUNOZ-Lopez** agree in summary that they are citizens and nationals of Mexico illegally present in the United States. They admit to entering the United States illegally. The material witnesses stated that they were to pay $1,500 to $2,00 (US) to be smuggled into the United States. The Material witnesses were shown a photographic line up and were able to identify defendant #6 **Jesus MIRANDA-Roman** as the driver of the load vehicle.